U.S. District Court
101 West Lombard Street
Baltimore, MD 21201

December 6, 2018



**GLR 18 CV 3805**

To Whom It May Concern,

This letter serves as a request to file a complaint against the National Security Agency (NSA) for violation of laws prohibited by the Equal Employment Opportunity Commission (EEOC). The NSA has made me a subject of discrimination (age, genetic information, and disability) and used discriminatory prohibited employment practices to revoke my security clearance and threaten to terminate my 33-year career. These activities include failure to provide reasonable accommodations for a disability, enforcing adverse employment terms and conditions based on age and disability, making forced discharge/resignation decisions, considering discipline & discharge options based on age & disability.

NSA stated in a Revocation Decision Statement, dated June 14, 2018, that their decisions are in order to "promote the efficiency of the service," however, their decisions are in violation of Intelligence Community Directive (ICD) 704, *"Personnel Security Standards and Procedures Governing Eligibility For Access to Sensitive Compartmented Information and Other Controlled Access Program Information"* dated 1 October 2008; Security Executive Agent Directive (SEAD) 4, *"National Security Adjudicative Guidelines"* dated 8 June 2017; and EEOC guidelines. Please be advised that the foregoing may not be a complete recitation of all applicable laws and practices that NSA has violated and prompted me to pursue this action.

ICD 704, SEAD 4, and EEOC policies all prohibit discrimination based on race, color, religion, sex, national origin, disability, or sexual orientation in making national security eligibility determinations. The Age Discrimination Employment Act of 1967 also forbids age discrimination against people 40 and older. EEOC's guidelines are much broader prohibiting discrimination based on age, race, color, religion, sex, national original, disability or genetic information, as well as other adverse prohibited practices that cover terms of conditions and employment, reasonable accommodation, discipline and discharge, and constructive discharge/forced resignation.

Violating EEOC guidelines, the Agency has made unlawful discipline and discharge decisions that have threatened my 33-year career based on age, disability, and genetic information. In the revocation statement, my age and alleged psychological/psychiatric conditions were used to make an adverse employment determination concerning me, which is prohibited in SEAD 4 and ICD 704. The Agency has violated disability laws by using unsubstantiated medical reports originated by Northwest Hospital in December 2017 alleging that I suffer from a mental impairment (psychosis) and used that diagnosis to take employment actions against me. Instead, the Agency is mandated to take steps to reasonably accommodate any employee suffering from a disability, according to law.

The revocation statement includes the following statement: *"a formal diagnosis of a disorder is not required for there to be concern under SEAD 4"*... and *"a duly qualified mental health professional should be consulted to disqualify and mitigate information under the guideline."* Complying with SEAD 4 procedures, I have provided disqualifying information from the Sante Group, a behavioral health organization, in which I received a more recent psychiatric assessment that contradicts earlier medical assessments, a measure that could mitigate security concerns, as authorized in SEAD 4. The

Agency has unlawfully enforced employment terms and conditions and/or constructive discharge/forced resignation based on age and disability by suggesting that I retire or resign. The Agency has also used genetic information, another violation of law, by using unsubstantiated information about my family's medical history to guide their decisions. These illegal practices are prohibited by EEOC and have been documented in Agency correspondence to me.

Throughout this ordeal, the Agency has continued to call into question my judgment, stability, reliability, and trustworthiness and have based their decision on an earlier medical opinion made by psychiatrists at Northwest Hospital. I am currently disputing this involuntary hospitalization, therefore, these records should not be considered.

I have complied with Agency security procedures. I have requested reviews and made the necessary appeals about their decisions, providing mitigating facts to dispute outdated medical reports about psychological/psychiatric conditions that are sometimes short-term, as well as other allegations that were raised in their June and September 2018 reports. Nevertheless, the Agency continued to pursue actions against me, a decision made by a sole person, rather than a duly constituted board. I have also taken necessary measures to mitigate the "alleged" condition in order to comply with SEAD 4 requirements. For example, I sought the second diagnosis on my own and have also been an active participant in therapy sessions held by the National Alliance of Mental Illness, a U.S. Government supported organization, in which I will graduate in December 2018. With that said, I feel that I have satisfactorily met the conditions of SEAD 4 to overturn the Agency's decision. Unfortunately, my actions have not changed the Agency's disposition. They continue to question my suitability for employment based on outdated (a year old) medical information that I feel is no longer relevant. Whatever I was going through, I no longer feel that it exists and that it was temporary.

As background, the Agency began their actions against me when I voluntarily returned documents, no longer considered to be classified, to the Agency's security officials. As a Compliance Officer, I used my skills by challenging the Office of Security's practices as it pertains to consent to video monitoring. They began the monitoring prior to requesting my signature on the *Consent to Monitoring* form. Further, as a former Policy Officer, I requested to see policy documents referenced in the form. After not being able to read hundreds of pages within an 8-hour period, and still refusing to sign the form, the Agency took actions to suspend my security clearance. I was later subjected to psychological testing and after not being able to complete a full psychological test, the Agency reported that I had no cognitive impairment, only a deterioration in functioning. I believe the deterioration was due to fatigue on the day of the test.

Subsequently, I was involuntarily hospitalized in December 2017 at Northwest Hospital and allegedly diagnosed with having several serious, chronic, psychiatric disorders ranging from major depressive disorder (single episode, severe w/anxious distress), depression w/psychotic features, before a final diagnosis of acute psychosis.

Since this series of events, I have complied with all security processing procedures to include signing the consent form and completing a video-graphed security investigation; however, the Agency persisted in their actions against me. As previously stated, I requested the Agency perform a second psychological test which was not honored and could have ruled out the condition saving everyone time and resources. Instead, I secured an opposing diagnosis from an external mental health organization, Sante Group.

Since the beginning of the incident, October 2017, I have expended an enormous amount of personal time, effort, and resources to get to this point. I have commuted to the agency to pick up material; spent hours researching law, policies, and appropriate therapy; attended weekly therapy sessions; made telephone calls, and neglected personal relationships. I have lost annual leave that could have been spent doing more enjoyable things. I have also missed opportunities for advancement, job opportunities, and recognition. The events of the past 14 months have caused me undue emotional distress and I am now faced with a tarnished reputation and defamation of character by being labeled as unstable, untrustworthy, unreliable, lacking discretion, lacking good character and sound judgment, and being unloyal to the United States. By the end of December 2018, I will have graduated from the therapy program, however, the Agency is adamant that I am no longer suitable for employment.

Early on, they made an assessment that it was unlikely that I would recover. Further, their decision to terminate my employment is, in my opinion, premature - in accordance with Appendix B: Bond Amendment guidance – as I have not been diagnosed as mentally incompetent. I personally feel that I have improved and it is unlikely that my situation will recur. I feel suitable enough to return to work as some of the other personnel that suffer from mental health conditions. I have done everything within my power to make a prompt, good-faith efforts to correct the situation, in accordance with SEAD 4, to include compliance with security procedures and meeting conditions that mitigate the security concerns that the Agency described in their statement.

My desire is to have the Agency cease and desist further processing of activities that discredit my 33-year career and reinstate my national security clearance. There are more serious 'incidents' documented in SEAD 4 in which the penalty is less severe. I am facing possible termination of employment for psychological symptoms while more severe incidents have less severe consequences. SEAD guidelines for allegiance to the U.S., criminal conduct, financial concerns, to name a few, have more relaxed penalties than those of psychological conditions. Dual citizenship holds more weight in continuance of security clearance access than an employee suffering from a 'mental illness' – which could be temporary (i.e. depression, anxiety, etc.). In my professional opinion, dual citizenship could present a greater national security risk and conflict of interest.

For your awareness, the SEAD 4 directive became effective a few months prior to my clearance revocation. I was not aware of its existence and unaware of my obligations under SEAD 4 as it is not part of the agency's annual training requirement. As I read through it, I realize that I have now satisfied many of the mitigating requirements to restore my security clearance. I have also provided information about my background and good character, as well as, information about my activities in the Baltimore community (i.e. volunteer and leadership).

SEAD 4 uses psychological and psychiatric terms interchangeably, and I also observed this in the revocation statement. With that said, it has made it difficult for me to narrow down the type of medical treatment/provider to help me satisfy the Agency's requirements for continued employment. I have asked for specific guidance, however, Agency security officials only referred me back to the revocation statement.

As you may be aware, ICD 704 uses seven standards/character traits – stability, trustworthiness, reliability, sound judgment, discretion, excellent character, and unquestionable loyalty – in making security clearance access determinations. SEAD 4 has a different set of traits – loyalty to the U.S. strength in character, honesty, discretion, sound judgment, reliability, ability to protect classified/sensitive information, and trustworthiness (Appendix A). The Agency is only using good

judgment, reliability, stability, and trustworthiness as a factor in their decision-making. I feel that I possess all of these traits.

SEAD 4 also mentions the Agency's obligations and restrictions when making access determinations. Agencies are required to report on favorable and unfavorable information (past and present) in making their decision. I have been an agency employee for 33 years and 'a person's life history shows evidence of reliability and trustworthiness,' according to SEAD 4. Reading the revocation statement, the Agency hasn't considered my entire life history or personnel file. They have not documented favorable information that occurred over the course of my career. For example, I complied with procedures to document foreign associations, which I did when I reported a friendship with a non-US citizen. I reported overseas travel and associations when I cruised to the West Caribbean and vacationed in Mexico. When I erroneously brought my cell phone into a secure facility, I immediately, and voluntarily, turned the phone into Security. I feel that this information should be looked at as favorable and taken into consideration.

Again, I feel that I have made good-faith efforts to do what is required in favor of national security and continued employment. There are more severe actions that would warrant employment termination. At this time, I feel stable and the symptoms were only a temporary setback. The agency has no documented evidence of recent or a recurring pattern of questionable judgment, according to SEAD 4 criteria. The mishandling of the classified documents, determined to be no longer classified, happened infrequently, was inadvertent, according to SEAD 4, and was voluntarily returned to the appropriate officials, in compliance with Agency procedures. As you can see, my efforts to comply with security procedures are more frequent than my non-compliance.

I consider myself to be stable, trustworthy, reliable, discreet, possess good character and sound judgment, and am unquestionably loyal to the United States. I am currently awaiting the Agency's decision to my November 2018 request for an in-person appeal to request they reinstate my security clearance for continued employment. I believe the Agency's decisions have been unfair and I am entitled to less serious consequences. The Agency should consider making exceptions (waiver, condition, deviation, etc.) that call for less severe measures, such as additional security monitoring, as described in SEAD 4.

It wasn't until I contacted the EEOC, as suggested to me several months ago, and re-read the revocation statement that I realized that I had a potential case. This explains why it has taken so long to initiate this action. If you need copies of Agency correspondence regarding this complaint, please provide me with an email address. My preferred contact information for this case is: Michele777xx@gmail.com. My alternate contact information is: 2152 Chantilla Rd, Catonsville, MD 21228 or 443.386.7586. Thank you in advance.

Sincerely,


Michele S.
U.S. Compliance Officer

2152 Chantilla Rd
Catonsville, MD 21228

U.S. District Court
101 West Lombard St
Baltimore, MD 21228
Attn: Complaints Dept

_____ FILED   _____ ENTERED
_____ LOGGED  _____ RECEIVED

DEC 1 1 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY                        DEPUTY

New Cate

21201-262915

